MARTIN D. CHITWOOD (*pro hac vice*)
STUART J. GUBER (*pro hac vice*)
JAMES M. EVANGELISTA (*pro hac vice*)
CHITWOOD & HARLEY, LLP
1230 Peachtree Street, NE
Promenade II, Suite 2300
Atlanta, Georgia 30309
Telephone:  (404) 873-3900
Facsimile:  (404) 876-4476

Lead Counsel for Plaintiffs

GREGORY E. KELLER (*pro hac vice*)
DARREN T. KAPLAN (*pro hac vice*)
HARNES KELLER, LLP
964 Third Avenue, Seventh Floor
New York, NY 10022
Telephone:  (212) 755-0022
Facsimile: (212) 755-0005

Associate Counsel for Plaintiffs

PAUL E. BENNETT (State Bar #063318)
GWENDOLYN R. GIBLIN (State Bar #181973)
GOLD BENNETT CERA & SIDENER, LLP
595 Market Street, Suite 2300
San Francisco, CA 94105-2835
Telephone:  (415) 777-2230
Facsimile:  (415) 777-5189

Liaison Counsel for Plaintiffs

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| In re PROVIDIAN FINANCIAL CORP.   ) | Master File No. C-01-3952 CRB (JCS) |
| ) | |
| SECURITIES LITIGATION   ) | <u>CLASS ACTION</u> |
| ) | |
| _____   ) | |
| ) | |
| This Document Relates to:  All Actions   ) | |
| ) | |
| _____   ) | |

**STIPULATION AND AGREEMENT OF SETTLEMENT**

This Stipulation and Agreement of Settlement, dated as of July 20, 2004, is submitted

pursuant to Rule 23 of the Federal Rules of Civil Procedure and is entered into by and among the following parties (as further defined in Section IV.1 below) to this Stipulation, by and through their respective counsel:  Lead Plaintiff RSA, individually and on behalf of the certified class it represents (as hereinafter defined); and Defendants Providian, David Alvarez ("Alvarez"), Shailesh J. Mehta ("Mehta"), David J. Petrini ("Petrini") and James Rowe ("Rowe"), by and through their respective counsel.

## I.    THE LITIGATION

A.    Commencing in October 2001, fourteen federal securities class action complaints alleging securities fraud against Defendants were filed in this District: *Southern Electrical Retirement Fund, et al. v. Providian Financial Corp., et al.*, C-01-3952; *Martino v. Providian Financial Corp., et al.*, C-01-3958; *Christianson v. Providian Financial Corp., et al.*, C-01-4020; *Fixler v. Providian Financial Corp., et al.*, C-01-4023; *Kulp v. Providian Financial Corp., et al.*, C-01-21013; *Padgett v. Providian Financial Corp., et al.*, C-01-4068; *Fireman v. Providian Financial Corp., et al.*, C-01-4071; *Roberts v. Providian Financial Corp., et al.*, C-01-4082; *Malone v. Providian Financial Corp., et al.*, C-01-4131; *Joint Industry Engineers Union v. Providian Financial Corp., et al.*, C-01-4434; *Ainsworth v. Providian Financial Corp., et al.*, C-01-4706; *Sanford v. Providian Financial Corp., et al.*, C-01-4942; *Malmquist v. Providian Financial Corp., et al.*, C-01-4958; and *Varnado v. Providian Financial Corp., et al.*, C-02-40.

B.    By Orders of the Court dated December 19, 2001 and March 4, 2002, respectively, the fourteen actions were consolidated under the above caption.  Subsequent to consolidation of the fourteen actions, another action, *Lake v. Providian Financial Corp., et al.*, C-02-3933, was filed and consolidated with *In re Providian Financial Corp. Securities Litigation*, Master File No. C-01-3952.

C.    By Order of the Court dated February 15, 2002, the Court appointed RSA as Lead

Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934.  The Court designated Chitwood & Harley, LLP as Plaintiffs' Lead Counsel and Gold Bennett Cera & Sidener LLP as Liaison Counsel.

D.      The Consolidated Class Action Complaint was filed on April 16, 2002.  On June 21, 2002, Defendants filed a motion to dismiss the Consolidated Class Action Complaint.  The motion to dismiss was fully briefed and the Court held a hearing on August 23, 2002.  Pursuant to the Court's Order dated August 23, 2002, Plaintiffs filed an Amended Consolidated Class Action Complaint on August 30, 2002 (the "Complaint").

E.      The Complaint generally alleges, among other things, that Defendants issued materially false and misleading statements regarding Providian's current financial condition and future prospects during the Class Period — June 6, 2001 through and including October 18, 2001 — in a scheme to artificially inflate the value of Providian's common stock.

F.      The Complaint further alleges that Lead Plaintiff and other Class Members purchased the common stock of Providian during the Class Period at prices artificially inflated as a result of the Defendants' dissemination of materially false and misleading statements regarding Providian in violation of Sections 10(b), 20(a), and 20A of the Securities Exchange Act of 1934, and Rule 10b-5 promulgated thereunder.

G.      Named as Defendants in the Complaint for violations of: (i) Section 10(b) and Rule 10b-5 were Providian, Alvarez, Mehta, Rowe, and Petrini; (ii) Section 20(a) were Alvarez, Mehta, Rowe, and Petrini; and (iii) Section 20A were Alvarez, Mehta, and Rowe.

H.      After additional briefing on Defendants' motion to dismiss, the Court denied Defendants' motion to dismiss by Order dated December 4, 2002.  Defendants filed their Answer to the Complaint on January 17, 2003.

I.      On August 2, 2002, while Defendants' motion to dismiss was pending, Lead Plaintiff

filed its motion for class certification. Lead Plaintiff's motion sought class representative status for Lead Plaintiff RSA and certification of a class consisting of all persons and entities who purchased or acquired Providian common stock during the period June 6, 2001 through and including October 18, 2001.

J.     In connection with Lead Plaintiff's motion for class certification, Defendants propounded document requests and interrogatories, to which RSA responded, producing over 1000 pages of documents and providing substantive responses to the interrogatories. In addition, Defendants conducted depositions of RSA employees familiar with RSA's investment strategy, transactions in Providian common stock and the litigation. After discovery, full briefing, class notice, and a hearing on Lead Plaintiff's motion for class certification, the Court granted the motion on January 15, 2004, certifying a Class as described in ¶ 1.5 below and also approving RSA as the representative of the Class.

K.     Commencing on or about April 21, 2004, the Notice of Pendency of Class Action was mailed to members of the Class, informing the Class of the Court's grant of class certification and giving members of the Class the opportunity to exclude themselves from the Class. Pursuant to the Notice of Pendency of Class Action, certain Persons chose to exclude themselves as Class Members by opting out of the Class. Attached hereto as Exhibit A is an Affidavit of Mailing by the Claims Administrator, including the Notice of Pendency of Class Action. Attached hereto as Exhibit C-1 is a list of the opt-outs who validly excluded themselves pursuant to the Notice of Pendency of Class Action

L.     Subsequent to the Court's Order denying Defendants' motion to dismiss and while Lead Plaintiff's motion for class certification was pending, the parties commenced merits discovery. Lead Plaintiff issued subpoenas duces tecum to numerous third parties, including securities analysts that followed Providian throughout the Class Period and Providian's external auditor, Ernst &

Young, LLP ("E&Y").  Collectively, the third parties produced thousands of pages of documents, which were reviewed and analyzed by Plaintiffs' Counsel.  Lead Plaintiff also took the depositions of numerous securities analysts and two E&Y auditors responsible for conducting E&Y's quarterly reviews and annual audits of Providian's financial statements.

M.      During merits discovery, Plaintiffs' Counsel also reviewed and analyzed approximately 180,000 pages of documents produced by Defendants and conducted depositions of more than thirty individuals who were employees of Providian during the Class Period, including each of the Individual Defendants.

N.      The parties also engaged in expert discovery.  The parties exchanged expert reports and completed many expert depositions by the time the agreement in principle to settle the litigation was reached.

O.      During the course of fact discovery, the parties had numerous discovery disputes.  At the Court's suggestion, the parties agreed upon the Honorable Eugene F. Lynch to serve as discovery master.  The parties filed numerous discovery motions that were resolved by Judge Lynch.

P.      Subsequent to the Court's ruling on the motion to dismiss, Defendant Alvarez filed a motion for summary judgment, which was granted by the Court on May 21, 2004, resolving all claims asserted against Alvarez in the consolidated actions in his favor.  As of the date of this Stipulation, the Court has not issued a formal order rendering judgment in favor of David Alvarez in this Action.

Q.      The parties met informally during the Summer of 2003 to discuss the merits of the case.  In the Fall of 2003, the parties agreed to mediation before the Honorable Daniel J. Weinstein of JAMS.  In advance of the initial mediation sessions, the parties exchanged detailed mediation statements.

Stipulation and Agreement of Settlement
Master File No. C-01-3952 CRB (JCS)

sf-1743524 v2

R.      During the course of the next several months, Judge Weinstein conducted numerous mediation sessions, both in person in San Francisco, California and via telephonic conference calls. As the mediation was conducted during the course of fact and expert discovery, the parties submitted supplemental mediation statements to Judge Weinstein on a confidential basis.

S.      While settlement negotiations continued, the parties prepared for trial, which was to commence on June 7, 2004.  The parties had submitted all pre-trial documentation to the Court and were prepared to commence trial on June 7, 2004.  On the eve of trial, the parties reached a resolution of the litigation with full knowledge of the strengths and weaknesses of the claims and defenses being asserted in the litigation.

## II.    DEFENDANTS' STATEMENTS AND DENIALS OF WRONGDOING AND LIABILITY

Defendants have denied and continue to deny each and all of the claims and contentions alleged by Lead Plaintiff in the Action.  Defendants expressly have denied and continue to deny all charges of wrongdoing or liability against them arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in the Action.  Defendants also have denied and continue to deny, *inter alia*, the allegations that Lead Plaintiff or the Class have suffered damage, that the price of Providian common stock was artificially inflated by reason of any alleged misrepresentation, non-disclosure or otherwise, or that Lead Plaintiff or any Class Member was harmed by any of the conduct alleged or that could have been alleged in the Action.

Nonetheless, Defendants have concluded that further conduct of the Action would be protracted and expensive, and that it is desirable that the Action be fully and finally settled in the manner and upon the terms and conditions set for in the Stipulation, in order to limit further expense, inconvenience and distraction, and to dispose of the burden of protracted litigation.

Defendants also have taken into account the uncertainty and risks inherent in any litigation, especially in complex cases like these.  Defendants have, therefore, determined that it is desirable and beneficial to them that the Action be settled in the manner and upon the terms and conditions set forth in this Stipulation.

## III.   CLAIMS OF LEAD PLAINTIFF AND BENEFIT OF SETTLEMENT

As set forth above, Lead Plaintiff, by its counsel, has conducted discussions and arm's-length negotiations with counsel for Defendants with respect to a compromise and settlement of the Action with a view to settling all of the issues in dispute and achieving the best relief possible consistent with the interests of the Class.

Based upon their investigation and pretrial discovery as set forth above, Plaintiff's Lead Counsel have concluded that the terms and conditions of this Stipulation are fair, reasonable and adequate to Lead Plaintiff and the other Class Members, and in their best interests, and have agreed to settle the claims raised in the Action pursuant to the terms and provisions of this Stipulation, after considering (a) the substantial benefits that Plaintiffs and the Class Members will receive from settlement of the Action, (b) the attendant risks of litigation, and (c) the desirability of permitting the Settlement to be consummated as provided by the terms of this Stipulation.

## IV.   DEFINED TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

NOW THEREFORE,  IT IS HEREBY STIPULATED AND AGREED by and among Lead Plaintiff, for itself and the Class, and the Defendants, by and through their respective counsel, that, subject to approval of the Court, the Action and the Released Claims, shall be finally and fully compromised, settled and released, and the Action shall be dismissed with prejudice, as to all Parties, upon and subject to the terms and conditions of this Stipulation, as follows:

1.    **Definitions**

As used in this Stipulation, the following terms shall have the following meanings:

1.1    "Action" means the above-captioned consolidated class action.

1.2    "Authorized Claimant" means a Class Member who submits a timely and valid Proof of Claim and Release form to the Claims Administrator.

1.3    "Cash Settlement Amount" means the $65,000,000 cash consideration.

1.4    "Claims Administrator" means the firm of Gilardi & Co. LLC, which shall administer the Settlement.

1.5    "Class" and "Class Members" means all Persons who purchased the common stock of Providian during the period between June 6, 2001 and October 18, 2001, inclusive, except for the following: (i) Defendants; (ii) members of the immediate families of each Individual Defendant; (iii) any entity in which any Defendant has or had a controlling interest; (iv) any person who was an officer or director of Providian or its subsidiaries or affiliates during the Class Period and members of the immediate families of such persons;(v) the legal representatives, heirs, successors or assigns of any such excluded party; and (vi) those persons who previously timely and validly requested exclusion from the Class as listed in Exhibit 1 to the [Proposed] Judgment attached hereto as Exhibit C.

1.6    "Class Period" means the period of time from June 6, 2001 through and including October 18, 2001.

1.7    "Complaint" means Plaintiffs' Amended Consolidated Class Action Complaint, filed August 30, 2002.

1.8    "Court" means the United States District Court for the Northern District of California.

1.9    "Defendants" means Providian and the Individual Defendants.

1.10   "Defendants' Counsel" means the law firm of Morrison & Foerster LLP.

1.11   "Defendants' D&O Insurers" means Defendants' insurers.

1.12   "Effective Date of Settlement" or "Effective Date" means the first date upon which all of the events specified in ¶ 10.1 hereof have been met and have occurred.

1.13   "Escrow Account" means the account established by the Escrow Agent to hold the Gross Settlement Fund.

1.14   "Escrow Agent" means the law firm of Chitwood & Harley LLP.

1.15   "Final" means the latest of:

i)   the date of final affirmance of an appeal of the Judgment, the expiration of the time for a petition for or a denial of a writ of certiorari to review the Judgment and, if certiorari is granted, the date of final affirmance of the Judgment following review pursuant to that grant; or

ii)   the date of final dismissal or withdrawal of any appeal from the Judgment or the final dismissal, denial or withdrawal of any proceeding on certiorari to review the Judgment; or

iii)   if no appeal is filed, the expiration date of the time for the filing or noticing of any appeal from the Judgment.  Any proceeding or order, or any appeal or petition for a writ of review or certiorari, pertaining solely to any Plan of Allocation and/or application for attorneys' fees and expenses shall not in any way delay or preclude the Judgment from becoming Final.

1.16   "Gross Settlement Fund" means the fund identified in ¶ 3.1 and deposited with the Escrow Agent in the Escrow Account.

1.17   "Individual Defendants" means David Alvarez, Shailesh J. Mehta, David J. Petrini, and James Rowe.

1.18    "Judgment" means the Final Judgment to be entered approving the Settlement substantially in the form attached hereto as Exhibit C.

1.19    "Lead Plaintiff" means Retirement Systems of Alabama.

1.20    "Notice of Pendency of Class Action" means the notice mailed to members of the Class commencing on or about April 21, 2004, informing the Class of the Court's grant of class certification and giving members of the Class the opportunity to exclude themselves from the Class.

1.21    "Person" means a natural person, individual, corporation, partnership, limited partnership, limited liability company, association, joint venture, joint venturer, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and, as applicable,  their/its respective spouses, heirs, executors, administrators, predecessors, successors, representatives, or assignees.

1.22    "Plaintiffs' Counsel" means all counsel who participated in the prosecution of the Action on behalf of Lead Plaintiff or the Class.

1.23    "Plaintiff's Lead Counsel" means the law firm of Chitwood & Harley, LLP.

1.24    "Plan of Allocation" means a plan or formula of allocation (as set forth in the Settlement Notice) of the Net Settlement Fund (as defined below) whereby the Net Settlement Fund shall be distributed to Authorized Claimants.

1.25    "Preliminary Approval Order" means the proposed order substantially in the form attached hereto as Exhibit B preliminarily approving the Settlement and directing notice thereof to the Class.

1.26    "Proof of Claim and Release" means the form submitted to the Claims Administrator by each Person claiming to be an Authorized Claimant, substantially in the form of Exhibit B-2 hereto.

1.27     "Providian" means Providian Financial Corporation.

1.28     "Released Claims" means any and all claims or causes of action (including Unknown Claims as defined in ¶ 1.36 hereof), demands, rights, liabilities, suits, debts, obligations and causes of action of every nature and description whatsoever, known or unknown, contingent or absolute, mature or unmatured, discoverable or undiscoverable, whether concealed or hidden, asserted or that might have been asserted, by Lead Plaintiff or the Class Members, or any of them, against the Released Parties based upon, arising out of, or related to (a) the purchase of Providian common stock during the Class Period; (b) any of the facts, transactions, events, occurrences, disclosures, statements, acts, omissions or failures to act which were or could have been alleged in or embraced or otherwise referred to or encompassed by the Action, regardless of upon what legal theory based, including, without limitation, claims for negligence, gross negligence, fraud, breach of fiduciary duty, breach of the duty of care and/or loyalty or violations of the common law, administrative rule or regulation, tort, contract, equity, or otherwise or of any state or federal statutes, rules or regulations.

1.29     "Released Parties" means each and all of the Defendants and each and any of Defendants' respective past, present or future directors, officers, employees, partnerships and partners, principals, agents, controlling shareholders, any entity in which any Defendant and/or any member(s) of that Defendant's immediate family has or have a controlling interest (directly or indirectly), attorneys, accountants, auditors, investment banks and investment bankers, underwriters, advisors, financial advisors, personal or legal representatives, analysts, agents, associates, servants, insurers, co-insurers and reinsurers, predecessors, successors, parents, subsidiaries, divisions, assigns, joint ventures and joint venturers, spouses, heirs, executors, administrators, related or affiliated entities, members of an Individual Defendant's immediate

family, and any trust of which any Defendant is the settlor or which is for the benefit of any Individual Defendant and/or member(s) of his family, and all other Persons.

1.30    "RSA" means Lead Plaintiff Retirement Systems of Alabama.

1.31    "Settlement" means the settlement contemplated by this Stipulation.

1.32    "Settlement Notice" means the Notice of Proposed Settlement of Class Action, Motion for an Award of Attorneys' Fee and Reimbursement of Expenses and Settlement Fairness Hearing, which is to be sent to members of the Class substantially in the form attached hereto as Exhibit B-1.

1.33    "Settling Parties" means, collectively, each of the Defendants, Lead Plaintiff, and each of the other Class Members.

1.34    "Stipulation" means this Stipulation of Settlement and its exhibits.

1.35    "Summary Notice" means the summary notice of proposed Settlement and hearing for publication substantially in the form attached as Exhibit B-3.

1.36    "Unknown Claims" means any Released Claims that Lead Plaintiff or any other Class Member does not know or suspect to exist in his, her, or its favor at the time of the release of the Released Parties which, if known by him, her, or it, might have affected his, her, or its Settlement with and release of the Released Parties, or might have affected his, her, or its decision not to object to this Settlement.  With respect to any and all Released Claims against the Released Parties, the Settling Parties stipulate and agree that, upon the Effective Date, Lead Plaintiff shall expressly waive and relinquish, and the other Class Members shall be deemed to have, and by operation of the Judgment shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits conferred by § 1542 of the California Civil Code, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR

and by any law of any state or territory of the United States, or principle of common law, or of international or foreign law, that is similar, comparable or equivalent to § 1542 of the California Civil Code.  Lead Plaintiff or any other Class Members may hereafter discover facts in addition to or different from those that he, she, or it now knows or believes to be true with respect to the Settled Claims, but the Settling Parties hereby stipulate and agree that upon the Effective Date, Lead Plaintiff fully, finally and forever settles and releases, and each of the other Class Members shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released any and all Released Claims against the Released Parties, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, that now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct that is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts.

2.    **Releases**

2.1    Upon the Effective Date, Lead Plaintiff and all other Class Members shall, and by operation of this Judgment shall be deemed to, fully, finally, and forever release, relinquish and discharge all Released Claims (including Unknown Claims) against each and all of the Released Parties, whether or not such Class Member executes and delivers a Proof of Claim and Release. The Settling Parties acknowledge, and the Class Members shall be deemed by operation of law to acknowledge, that the foregoing waiver of Unknown Claims, and of the provisions, rights, and

benefits of Section 1542 of the California Civil Code, was bargained for and is a key element of the Settlement of which the release in this paragraph is a part.

2.2     Upon the Effective Date, each of the Released Parties shall, and by operation of this Judgment shall be deemed to, fully, finally, and forever release, relinquish and discharge Lead Plaintiff and each of the other Class Members from all claims (including Unknown Claims) arising out of, relating to, or in connection with the institution, prosecution, assertion or resolution of the Action or the Released Claims.

**3.     The Settlement Consideration**

3.1     Defendants' D&O Insurers shall pay or cause to be paid to the Class, in settlement of the Released Claims, the sum of $65,000,000 in cash (the "Cash Settlement Amount") to be deposited into the Escrow Account maintained by the Escrow Agent in accordance with the provisions of ¶¶ 3.2 and 3.3 below.

3.2     Within a reasonable period (not to exceed 30 calendar days) after notice of entry of the Preliminary Approval Order, Defendants' D&O Insurers shall pay or cause to be paid $200,000, to be set aside by the Escrow Agent as the "Notice and Administration Fund" and to be used solely for the purposes of that Fund as described in ¶¶ 4.6 and 4.7 below.

3.3     Within seven business days after notice of entry of the Judgment, Defendants' D&O Insurers shall pay or cause to be paid the balance of the Cash Settlement Amount, which shall constitute the "Gross Settlement Fund."

3.4     The payments described in ¶¶ 3.1 through 3.3 are the only payments to be made by or on behalf of Defendants in connection with the Settlement of the Released Claims.

Stipulation and Agreement of Settlement
Master File No. C-01-3952 CRB (JCS)

sf-1743524 v2

4.      **Administration of the Gross Settlement Fund and the Notice and Administration Fund**

(a) **Duties of the Escrow Agent**

4.1      Upon receipt, the Escrow Agent shall invest any funds in excess of $100,000 in short term United States Agency or Treasury Securities, and shall collect and reinvest all interest accrued thereon.  Any funds held in escrow in an amount of less than $100,000 may be held in an interest bearing bank account insured by the FDIC.  The Escrow Agent shall reinvest the proceeds of these instruments as they mature in similar instruments at the then-current market rates.  Neither Defendants nor Defendants' Counsel shall have any responsibility or liability for investment decisions.  The Gross Settlement Fund shall bear all risks related to its investment.

4.2      The Escrow Agent shall not disburse the Gross Settlement Fund except as provided for in the Stipulation, or by an Order of the Court, or with the written agreement of Defendants' Counsel, Defendants' D&O Insurers, and Plaintiffs' Counsel.

4.3      Subject to further orders and/or directions as may be made by the Court, the Escrow Agent is authorized to execute such transactions on behalf of the Class Members as are consistent with the terms of the Stipulation.

4.4      All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to the Stipulation, the Plan of Allocation and/or further order(s) of the Court.

4.5      The Claims Administrator shall administer the Settlement under Plaintiffs' Lead Counsel's supervision and subject to the jurisdiction of the Court.  Defendants shall have no responsibility or liability for the administration of the Settlement and shall have no liability to the Class in connection with such administration.

4.6     The Notice and Administration Fund may be used by Plaintiffs' Lead Counsel, without further approval from Defendants or the Court, to pay costs and expenses reasonably and actually incurred in connection with providing notice to the Class, locating Class Members, assisting with the filing of claims, administering and distributing the Gross Settlement Fund to the Class Members, processing Proof of Claim and Release forms and paying escrow fees and costs, if any, the actual costs of publication, printing and mailing of the Settlement Notice, Summary Notice, reimbursements to nominee owners for forwarding the Settlement Notice to their beneficial owners, and the administrative expenses incurred and fees charged by the Claims Administrator in connection with providing the Settlement Notice and processing the submitted claims.  The Notice and Administration Fund may also be invested and earn interest as provided for in ¶ 4.1 of this Stipulation.

4.7     Five (5) business days after entry of the Judgment, any balance (including interest) then remaining in the Notice and Administration Fund may be transferred by the Escrow Agent to, and deposited and credited as part of, the Gross Settlement Fund to be applied as set forth in ¶ 4.8 below.

4.8     The Gross Settlement Fund, net of any Taxes (as defined below) on the income thereof, shall be used to pay (i) any remaining notice and administration costs referred to in ¶ 4.6; and (ii) the attorneys' fee and expense award referred to in ¶¶ 5.1 through 5.7 hereof, including any award of expenses and lost wages to Lead Plaintiff.

**(b)     Taxes**

4.9     (a)     The Settling Parties and the Escrow Agent agree to treat the settlement fund as being at all times a "Qualified Settlement Fund" within the meaning of Treas. Reg. § 1.468B-1. In addition, the Escrow Agent, as administrator of the settlement fund within the meaning of Trea. Reg. §1.468B-2(k)(3), and, as required, those Defendants contributing any settlement consideration

shall jointly and timely make the "relation-back election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date.  Such election shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereunder to cause the appropriate filing to occur.

(b)    For the purposes of § 468B of the Internal Revenue Code of 1986, and the regulations promulgated thereunder, including Treas. Reg. § 1.468B, the "administrator" shall be the Escrow Agent.  The Escrow Agent shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including without limitation the returns described in Treas. Reg.  § 1.468B-2(k)).  Such returns (as well as the election described in ¶ 4.9(a)) shall be consistent with this ¶ 4.9 and in all events shall reflect that all taxes (including any estimated taxes, interest or penalties) on the income earned by the settlement fund shall be paid out of the Settlement Fund as provided in ¶ 4.9(c) hereof.

(c)    All (i) taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund including any taxes or tax detriments that may be imposed on the Defendants, or Defendants' D&O Insurers, with respect to any income earned by the Settlement Fund for any period for which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes ("Taxes"), and (ii) expenses and costs incurred in connection with the operation and implementation of this ¶ 4.9 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this ¶ 4.9) ("Tax Expenses"), shall be paid out of the Settlement Fund; in all events the Defendants and Defendants' D&O Insurers shall have no liability or responsibility for the Taxes, the Tax Expenses, or the filing of any tax returns or other documents with the Internal Revenue Service or any state or local taxing

authority.  The Escrow Agent shall indemnify and hold Defendants and Defendants' D&O Insurers harmless for Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification).  Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court, and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(1)-(2)); the Defendants and Defendants' D&O Insurers are not responsible and shall have no liability therefor, or for any reporting requirements that may relate thereto, except that Defendants' Counsel agree to provide promptly to the Escrow Agent the statement described in Treasury Regulation § 1.468B-3(e).  The Settling Parties hereto agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this ¶ 4.9.

(d)     For purposes of this ¶ 4.9, references to the "Settlement Fund" shall include both the Gross Settlement Fund and the Notice and Administration Fund, and shall also include any earnings thereon.

**(c)     Termination**

4.10     In the event that the Stipulation is not approved, or is terminated or canceled, or if the Effective Date does not occur for any reason, including without limitation, in the event the Judgment is reversed or vacated following any appeal taken therefrom, the Gross Settlement Fund (including accrued interest) and the funds in the Notice and Administration Fund (described in ¶ 4.6 above), less expenses actually paid, incurred or due and owing in connection with the Settlement provided for herein, shall be refunded to Defendants' D&O Insurers as provided in ¶ 10.5 below.

**5.      Plaintiffs' Counsel's Attorneys' Fees and Expenses**

5.1      Plaintiffs' Lead Counsel will file a joint petition on behalf of all Plaintiffs' Counsel requesting the Court for an award from the Gross Settlement Fund of attorneys' fees not to exceed 14% of the Cash Settlement Amount of $65,000,000 and reimbursement of expenses, plus accrued interest.  Included in the joint petition will be a request on behalf of Lead Plaintiff for an award of expenses and lost wages.

5.2      Such attorneys' fees, expenses, and interest as are awarded by the Court shall be payable from the Gross Settlement Fund to Plaintiffs' Lead Counsel immediately upon the latter of: (i) award by the Court or (ii) establishment of the Gross Settlement Fund, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof, subject to Plaintiffs' Lead Counsel's obligation to make appropriate refunds or repayments to the Gross Settlement Fund plus accrued interest at the same net rate as earned by the Gross Settlement Fund, if and when, as a result of any appeal and/or further proceedings on remand, or successful collateral attack, the fee or cost award is modified or reversed, as described below.

5.3      In the event the fee or cost award is reduced or reversed, or this Stipulation or the Settlement set forth herein do not become effective for any reason, or the Judgment or order reflecting the fee or cost award is reversed or modified on appeal, or this Stipulation is canceled or terminated for any other reason, and in the event the fee or cost award has been paid to any extent, Plaintiffs' Lead Counsel shall within five (5) business days from the event which precludes the Effective Date from occurring or such reversal or modification, or from the date Plaintiffs' Lead Counsel receives notice thereof from Defendants' Counsel or a court of appropriate jurisdiction, refund to the Gross Settlement Fund, consistent with such reversal or modification, the fees, expenses, costs, and interest previously paid to them from the Gross Settlement Fund, including

accrued interest at the same net rate as earned by the Gross Settlement Fund from the time of withdrawal until the date of refund.  Plaintiffs' Counsel and their law firms shall be jointly and severally liable for such repayment.  Each such Plaintiffs' Counsel's law firm, as a condition of receiving such fees and expenses, on behalf of itself and each partner and/or shareholder of it, agrees that the law firm and its partners and/or shareholders are subject to the jurisdiction of the Court for the purpose of enforcing this ¶ 5.3 of the Stipulation.  Without limitation, each such law firm and its partners and/or shareholders agree that the Court may, upon application of Defendants and notice to Plaintiffs' Lead Counsel, summarily issue orders, including but not limited to, judgments and attachment orders, and may make appropriate findings of or sanctions for contempt, against them or any of them should such law firm fail timely to repay fees and expenses pursuant to this ¶ 5.3 of the Stipulation of Settlement.

5.4     The Released Parties shall have no responsibility for, and no liability whatsoever with respect to, any payment to Plaintiffs' Counsel from the Cash Settlement Amount.

5.5     The Released Parties shall have no responsibility for, and no liability with respect to, the allocation among Plaintiffs' Counsel, or any other Person who may assert some claim thereto, of any award of attorneys' fees and expenses that the Court may make in this Action, and Defendants take no position with respect to such matters.

5.6     Plaintiffs' Lead Counsel shall have sole discretion for allocation of the attorneys' fees awarded based upon their determination of the contribution by each of Plaintiffs' Counsel to the prosecution of the Action.

5.7     The procedure for and allowance or disallowance by the Court of any application for attorneys' fees, costs and expenses, including the fees of experts and consultants, are not part of the Settlement set forth in this Stipulation, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement set forth in this

Stipulation, and any order or proceeding relating to such application, or any appeal from any order relating thereto, or reversal or modification thereof, shall not operate to terminate or cancel the Stipulation, or affect or delay the finality of the Judgment.

**6.     Administration Expenses**

6.1     Plaintiffs' Lead Counsel will apply to the Court, on notice to Defendants' Counsel, for an order (the "Class Distribution Order") approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of the claims submitted herein and approving any fees and expenses not previously applied for, including the fees and expenses of the Claims Administrator, and, if the Effective Date has occurred, directing payment of the Net Settlement Fund to Authorized Claimants.

**7.     Distribution To Authorized Claimants**

7.1     The Claims Administrator shall determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's Recognized Claim (as defined in the Plan of Allocation described in the Settlement Notice attached hereto as Exhibit B-1 hereto, or in such other Plan of Allocation as the Court approves).

7.2     Only those Class Members filing valid and timely Proof of Claim and Release forms shall be entitled to participate in the Settlement and receive a distribution from the Net Settlement Fund.  The Proof of Claim and Release to be executed by the Class Members shall release all Released Claims against the Released Parties, and shall be substantially in the form contained in Exhibit B-2 hereto.  All Class Members shall be bound by the releases set forth in this Stipulation whether or not they submit a valid and timely Proof of Claim and Release.

7.3     Defendants shall have no role in or responsibility for the review or evaluation of Proof of Claim and Release forms.

7.4     The Plan of Allocation proposed in the Settlement Notice is not a necessary term of this Stipulation and it is not a condition of this Stipulation that the Plan of Allocation be approved.

7.5     Each Authorized Claimant shall be allocated a *pro rata* share of the Net Settlement Fund based on his or her Recognized Claim compared to the total Recognized Claim of all Authorized Claimants.  This is not a claims-made settlement.  The Defendants' D&O insurers shall not be entitled to the return of any portion of the Cash Settlement Amount once the Effective Date occurs, as defined in ¶ 10.1 below.  The Defendants shall have no involvement in or liability for reviewing or challenging claims.

7.6     Any member of the Class who does not submit a valid Proof of Claim and Release will not be entitled to receive any of the proceeds from the Net Settlement Fund but will otherwise be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment and the releases provided for herein, and will be barred from bringing any action against the Released Parties concerning the Released Claims.

7.7     Plaintiffs' Lead Counsel shall have the right, but not the obligation, to waive what they deem to be formal or technical defects in any Proof of Claim and Release submitted in the interests of achieving substantial justice.

7.8     For purposes of determining the extent, if any, to which a Class Member shall be entitled to be treated as an "Authorized Claimant", the following conditions shall apply:

(a)     Each Class Member shall be required to submit a Proof of Claim and Release (see attached Exhibit B-2), supported by such documents as are designated therein, including proof of the claimant's loss, or such other documents or proof as Plaintiffs' Lead Counsel, in their discretion, may deem acceptable;

(b)     All Proof of Claim and Release forms must be submitted by the date specified in the Settlement Notice unless such period is extended by Order of the Court.  Any Class

Member who fails to submit a Proof of Claim and Release by such date shall be forever barred from receiving any payment pursuant to this Stipulation (unless, by Order of the Court, a later submitted Proof of Claim and Release by such Class Member is approved), but shall in all other respects be bound by all of the terms of this Stipulation and the Settlement including the terms of the Judgment and the releases provided for herein, and will be barred from bringing any action against the Released Parties concerning the Released Claims.  Provided that it is received before the motion for the Class Distribution Order is filed, a Proof of Claim and Release shall be deemed to have been submitted when posted, if received with a postmark indicated on the envelope and if mailed by first-class mail and addressed in accordance with the instructions thereon.  In all other cases, the Proof of Claim and Release shall be deemed to have been submitted when actually received by the Claims Administrator;

(c)     Each Proof of Claim and Release shall be submitted to and reviewed by the Claims Administrator, under the supervision of Plaintiffs' Lead Counsel, who shall determine in accordance with this Stipulation the extent, if any, to which each claim shall be allowed, subject to review by the Court pursuant to subparagraph (e) below;

(d)     A Proof of Claim and Release that does not meet the submission requirements may be rejected.  Prior to rejection of a Proof of Claim and Release, the Claims Administrator shall communicate with the Claimant in order to remedy the curable deficiencies in the Proof of Claim and Release submitted. The Claims Administrator, under supervision of Plaintiffs' Lead Counsel, shall notify, in a timely fashion and in writing, all Claimants whose Proof of Claim and Release they propose to reject in whole or in part, setting forth the reasons therefor, and shall indicate in such notice that the Claimant whose claim is to be rejected has the right to a review by the Court if the Claimant so desires and complies with the requirements of subparagraph 7.8 (e) below;

(e)     If any Claimant whose claim has been rejected in whole or in part desires to contest such rejection, the Claimant must, within twenty (20) calendar days after the date of mailing of the notice required in subparagraph (d) above, serve upon the Claims Administrator a notice and statement of reasons indicating the Claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court.  If a dispute concerning a claim cannot be otherwise resolved, Plaintiffs' Lead Counsel shall thereafter present the request for review to the Court; and

(f)     The administrative determinations of the Claims Administrator accepting and rejecting claims shall be presented to the Court, on notice to Defendants' Counsel, for approval by the Court in the Class Distribution Order.

7.9     Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to the Claimant's claim, and the claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to that Claimant's status as a Class Member and the validity and amount of the Claimant's claim.  No discovery shall be allowed on the merits of the Action or Settlement in connection with processing of the Proof of Claim and Release forms.

7.10     Payment pursuant to this Stipulation shall be deemed final and conclusive against all Class Members.  All Class Members whose claims are not approved by the Court shall be barred from participating in distributions from the Net Settlement Fund, but otherwise shall be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment and the releases provided for herein, and will be barred from bringing any action against the Released Parties concerning the Released Claims.

7.11     All proceedings with respect to the administration, processing and determination of claims described by ¶¶ 7.1 through 7.10 of this Stipulation and the determination of all

Stipulation and Agreement of Settlement
Master File No. C-01-3952 CRB (JCS)

- 24 -

sf-1743524 v2

controversies relating thereto, including disputed questions of law and fact with respect to the validity of claims, shall be subject to the jurisdiction of the Court.

7.12    The Net Settlement Fund shall be distributed to Authorized Claimants by the Claims Administrator only after the Effective Date and after:  (i) all Claims have been processed, and all Claimants whose claims have been rejected or disallowed, in whole or in part, have been notified and provided the opportunity to be heard concerning such rejection or disallowance; (ii) all objections with respect to all rejected or disallowed claims have been resolved by the Court, and all appeals therefrom have been resolved or the time therefor has expired; (iii) all matters with respect to attorneys' fees, costs, and disbursements have been resolved by the Court, all appeals therefrom have been resolved or the time therefore has expired; and (iv) all costs of administration have been paid.

7.13    It is understood and agreed by the Settling Parties that any proposed Plan of Allocation including, without limitation, any adjustment to an Authorized Claimant's claim as set forth therein, is not a part of this Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement set forth in this Stipulation, and any order or proceeding relating to the Plan of Allocation shall not operate to terminate or cancel this Stipulation or affect the finality of the Court's Judgment approving this Stipulation and the Settlement, or any other orders entered pursuant to the Stipulation.

7.14    Neither the Released Parties (including the Defendants' D&O Insurers) nor their respective counsel, shall have any responsibility for, interest in, or liability whatsoever with respect to, the investment or distribution of the Gross Settlement Fund, the Plan of Allocation, the determination, administration or calculation of claims, the payment or withholding of Taxes, or any losses incurred therewith.  No Person shall have any claim of any kind against the Released Parties (including Defendants' D&O Insurers) nor their respective counsel, with respect to matters set forth

in this paragraph, and the Class Members and Plaintiffs' Counsel release the Released Parties, Defendants' D&O Insurers, and their respective counsel, from any and all liability arising from or with respect to any of the foregoing.

**8.      Terms Of Preliminary Approval Order**

8.1      Within five (5) days after the execution of this Stipulation, counsel for the Settling Parties, or any of them, shall submit this Stipulation together with its Exhibits to the Court and apply for entry of a Preliminary Approval Order, substantially in the form attached hereto as Exhibit B, providing for the preliminary approval of the Settlement set forth in this Stipulation and the holding of a hearing (the "Settlement Hearing") to determine whether the Court should: (a) approve this Stipulation and the Settlement as being in good faith, fair, reasonable and adequate; (b) enter the Judgment, substantially in the form attached hereto as Exhibit C, approving the Settlement contemplated by this Stipulation; (c) approve the mailing and publication of a Notice of Settlement of Class Action (the "Notice") substantially in the form attached hereto as Exhibits B-1 and B-3; and (d) hear such other matters as the Court may deem necessary and appropriate.  The Notice shall include the general terms of the Settlement, the proposed Plan of Allocation, the general terms of the application for attorneys' fees and reimbursement of expenses, and the date of the Settlement Hearing, and shall inform Class Members of their right to object to the Settlement, the Plan of Allocation, or the application for attorneys' fees and reimbursement of expenses.  Brokerage firms and other persons and entities who were record owners of Providian shares purchased during the Class Period, but were not beneficial owners of such shares, will be requested in the Notice to promptly send the Notice to the applicable beneficial owners.  The Notice shall set forth procedures for objection by Class Members to the Settlement, the Plan of Allocation or the application for attorneys' fees and reimbursement of expenses.

**9**.      **Terms Of Judgment**

9.1      At the Settlement Hearing, Counsel for the Settling Parties shall request that the Court enter the Judgment, substantially in the form attached hereto as Exhibit C, approving the Settlement contemplated by this Stipulation.

**10.**      **Effective Date Of Settlement, Waiver Or Termination**

10.1      The Effective Date of Settlement shall be the first date by which all the following events and conditions shall have occurred or been met:

(a)      execution of the Stipulation;

(b)      entry of the Preliminary Approval Order substantially in the form attached hereto as Exhibit B;

(c)      approval by the Court of the Settlement, following notice to the Class and a hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure;

(d)      entry of the Judgment, substantially in the form of Exhibit C attached hereto;

(e)      the Judgment has become Final;

(f)      payment to the Escrow Agent of the Cash Settlement Amount pursuant to ¶ 3.1 above; and

(g)      Defendants' Counsel or Plaintiffs' Lead Counsel shall not have given notice of intent to withdraw from the Settlement, pursuant to ¶ 10.2 below.

10.2      Defendants' Counsel or Plaintiffs' Lead Counsel shall have the right to terminate the Settlement and this Stipulation by providing written notice of their election to do so ("Termination Notice") to all other parties hereto within thirty (30) calendar days of:  (a) the Court's declining to enter the Preliminary Approval Order in any material respect; (b) the Court's refusal to approve this Stipulation or any material part of it;  (c) the Court's declining to enter the Judgment in any material respect, other than with respect to the Plan of Allocation or the award of attorneys' fees

and expenses to Plaintiffs' Counsel; or (d) the date upon which the Judgment is modified or reversed in any material respect — other than with respect to the Plan of Allocation or the award of attorneys' fees and reimbursement of expenses to Plaintiffs' Counsel — by the Court of Appeals or the Supreme Court.

10.3    If all of the conditions specified in ¶10.1 are not met, then this Stipulation shall be canceled and terminated unless Plaintiffs' Counsel, Defendants' D&O Insurers, and Defendants' Counsel mutually agree in writing to proceed with the Stipulation.

10.4    Neither a modification nor reversal on appeal of any Plan of Allocation or of an award by the Court of any amount of attorneys' fees, expenses and interest to any of Plaintiffs' Counsel shall constitute grounds for cancellation and termination of the Stipulation.

10.5    Except as otherwise provided herein, in the event the Settlement is terminated or fails to become effective for any reason, within five (5) business days after written notification, the parties to this Stipulation shall be deemed to have reverted to their respective status in the Action as of June 3, 2004 and, except as otherwise expressly provided, the parties shall proceed in all respects as if this Stipulation and any related orders had not been entered, including any award of attorneys' fees, expenses, and interest thereupon, and any portion of the Cash Settlement Amount previously paid by Defendants' D&O Insurers, together with any interest earned thereon, less any Taxes due with respect to such income, and less costs of administration and notice actually incurred and paid or payable from the Cash Settlement Amount (not to exceed $200,000 without the prior approval of Defendants or the Court), shall be returned to the Person(s) making the deposits.

10.6    If the Effective Date does not occur, or in the event the Settlement is terminated or fails to become effective for any reason, the terms and provisions of the Stipulation shall have no force and effect with respect to the Settling Parties, with the exception of this paragraph and ¶¶ 1.1-1.36, 4.6, 4.9-4.10, 5.3-5.5, 5.7, 7.14, 10.1, 10.3-10.5, and 11.1-11.2.  Any Judgment or order

Stipulation and Agreement of Settlement
Master File No. C-01-3952 CRB (JCS)

- 28 -

sf-1743524 v2

entered by the Court in accordance with the terms of this Stipulation shall be vacated as *nunc pro tunc*.

**11.      Alvarez Summary Judgment Order**

11.1     The Settling Parties agree to proceed in good faith to obtain, prior to entry of the Court's Preliminary Approval Order, entry of an Order Granting David Alvarez's Motion for Summary Judgment (the "Alvarez Summary Judgment Order"), substantially in the form attached hereto as Exhibit D.

11.2     Nothing in this Stipulation shall be construed as limiting the offer or receipt in any pending action, including without limitation, in *In re Providian Financial Corporation Derivative Litigation,* San Francisco Superior Court No. 401954, and *First Winchester Investments Ltd. v. Providian Financial Corporation,* San Francisco Superior Court No. 410772, of the Alvarez Summary Judgment Order as evidence, including without limitation as evidence that the claims asserted against Alvarez in such pending action are without merit.

**12.      No Admission Of Wrongdoing; Confidentiality**

12.1     Neither the Stipulation nor the Settlement contained therein, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any claims released therein or by virtue of the releases attached thereto, including any of the Released Claims, or (b) may be deemed to be or may be used as an admission or evidence of any fault, wrongdoing, omission, or liability of any of the Released Parties, in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal.  Released Parties may file the Stipulation, the Judgment and/or any document executed pursuant to or in furtherance of the Stipulation, in any action that may be brought against them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, full faith and credit, release,

Stipulation and Agreement of Settlement
Master File No. C-01-3952 CRB (JCS)

- 29 -

sf-1743524 v2

good faith settlement, judgment bar reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.  Defendants have denied and continue to deny each and all of the claims alleged or threatened or suggested against them in or relating to the Action.

12.2    The Stipulation shall not be offered against Lead Plaintiff or the Class as (a) evidence of or construed as or deemed to be evidence of any presumption, concession, or admission by Lead Plaintiff or the Class with respect to the truth or any fact alleged by Lead Plaintiff or the validity of any claim that had been or could have been asserted in the Action or in any litigation; (b) evidence of any infirmity in the claims of Lead Plaintiff and the Class; (c) evidence of any presumption, concession, or admission with respect to any liability, negligence, fault or wrongdoing; (d) an admission or concession that the consideration to be given hereunder represents the amount which could or would have been recovered after trial; and (e) an admission, concession or presumption that any of their claims are without merit or that damages recoverable under the Complaint would not have exceeded the Cash Settlement Amount.

12.3    The Settling Parties and their respective counsel, and each of them, agree, to the extent permitted by law, that all agreements made and orders entered during the course of the Action relating to the confidentiality of information shall survive this Stipulation.

12.4    All confidential discovery materials produced during the Action shall, within thirty (30) days after the Effective Date, be destroyed by the party obtaining the materials, provided, however, that counsel's work product need not be destroyed.  A letter certifying compliance with this provision shall be provided to counsel for the producing party.

## 13.    Miscellaneous Provisions

13.1    All of the exhibits attached hereto are material and integral parts hereof and are hereby incorporated by reference as though fully set forth herein.

13.2     Lead Plaintiff and Defendants agree not to assert in any forum that the litigation was brought by Lead Plaintiff or the Class, or defended by Defendants, in bad faith or without a reasonable basis.  The parties hereto shall assert no claims of any violation of Rule 11 of the Federal Rules of Civil Procedure relating to the prosecution, defense, or settlement of the Action.  The parties agree that the amount paid and the other terms of the Settlement were negotiated at arm's length in good faith by the parties, and reflect a settlement that was reached voluntarily after consultation with experienced legal counsel.

13.3     This Stipulation may not be modified or amended, nor may any of its provisions be waived except by a writing signed by all parties hereto or their successors-in-interest.

13.4     The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

13.5     The implementation, administration, consummation and enforcement of the Settlement as embodied in this Stipulation shall be under the authority of the Court.  The Court also shall retain jurisdiction for the purpose of entering orders providing for awards of attorneys' fees and reimbursement of expenses to Plaintiffs' Counsel.

13.6     The waiver by one party of any breach of this Stipulation by any other party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

13.7     This Stipulation constitutes the entire agreement among the parties hereto concerning the Settlement of the Action, and no representations, warranties, or inducements have been made by any party hereto concerning this Stipulation.

13.8     This Stipulation may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the parties to this Stipulation shall exchange among themselves original signed counterparts.

13.9     This Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.

13.10    The Stipulation and the Exhibits thereto shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of California, and the rights and obligations of the parties to the Stipulation, and the construction, interpretation, operation, effect and validity of this Stipulation, and all documents necessary to effectuate it, shall be governed by the internal laws of the State of California without regard to conflicts of laws, except to the extent that federal law requires that federal law govern.

13.11    This Stipulation shall not be construed more strictly against one party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the parties, it being recognized that it is the result of arm's-length negotiations between the parties and all parties have contributed substantially and materially to the preparation of this Stipulation.

13.12    All counsel and any other Person executing this Stipulation and any of the exhibits hereto, or any related settlement documents, warrant and represent that they have the full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms.

13.13    The Settling Parties acknowledge that it is their intent to consummate this Stipulation and agree to cooperate to the extent necessary to effectuate and implement all terms and conditions of this Stipulation and to exercise their best efforts to accomplish the terms and conditions of this Stipulation.  Plaintiffs' Counsel and Defendants' Counsel agree to cooperate fully with one another in seeking Court approval of the Preliminary Approval Order, the Stipulation and the Settlement, and to promptly agree upon and execute all such other documentation as may be reasonably required to obtain final approval by the Court of the Settlement.

13.14   Except as otherwise provided herein, each party shall bear its own costs.  Except as described in ¶ 3.1, Defendants shall have no monetary liability to the Class or to Plaintiffs' Counsel. Except as described in ¶ 3.1, Defendants' D&O Insurers shall have no liability of any kind to the Class or to Plaintiffs' Counsel.

Dated:  July 20, 2004

CHITWOOD & HARLEY, LLP                    MORRISON & FOERSTER, LLP


_____/s/_____                          _____/s/_____
MARTIN D. CHITWOOD (*pro hac vice*)        MELVIN R. GOLDMAN
STUART J. GUBER (*pro hac vice*)           JORDAN ETH
JAMES M. EVANGELISTA (*pro hac vice*)      MIA MAZZA
MERYL W. EDELSTEIN (*pro hac vice*)        425 Market Street
1230 Peachtree Street, NE                  San Francisco, CA  94105-2482
Promenade II, Suite 2300                   Telephone:  (415) 268-7000
Atlanta, Georgia 30309                     Facsimile:  (415) 268-7522
Telephone:  (404) 873-3900
Facsimile:  (404) 876-4476                 **Counsel for Defendants**

**Lead Counsel for Plaintiffs**

**HARNES KELLER, LLP**
GREGORY E. KELLER (*pro hac vice*)
DARREN T. KELLER (*pro hac vice*)
964 Third Avenue, Seventh Floor
New York, NY 10022
Telephone:  (212) 755-0022
Facsimile: (212) 755-0005

**Associate Counsel for Plaintiffs**

**GOLD BENNETT CERA & SIDENER, LLP**
PAUL E. BENNETT (State Bar #063318)
GWENDOLYN R. GIBLIN (State Bar #181973)
595 Market Street, Suite 2300
San Francisco, CA 94105-2835
Telephone:  (415) 777-2230
Facsimile:  (415) 777-5189

**Liaison Counsel for Plaintiffs**

1

<u>**CERTIFICATE OF SERVICE**</u>

2

This is to certify that I have this day served a true and correct copy of the within and

3

foregoing "Stipulation and Agreement of Settlement" upon the counsel listed below via facsimile

4

and as otherwise indicated:

5

<u>Also by Federal Express</u>

6

Melvin R. Goldman
Jordan Eth

7

Mia A. Mazza
**Morrison & Foerster, LLP**

8

425 Market Street
San Francisco, CA  94105-2482

9

Fax: (415) 268-7522

Paul F. Bennett
Gwendolyn R. Giblin
**Gold Bennett Cera & Sidener, LLP**
595 Market Street, Suite 2300
San Francisco, CA 94105-2835
Fax: (415) 777-5189

10

<u>Also by Federal Express</u>

11

Darius C. Ogloza
Elissa J. Germaine

12

**Latham & Watkins**

13

505 Montgomery Street, Suite 190
San Francisco, CA 94111

14

Fax: (415) 395-8095
Assoc. Counsel for Defendant Alvarez

15

<u>Also by Federal Express</u>

16

17

Asim Bhansali
**Keker & Van Nest LLP**

18

710 Sansome Street
San Francisco, CA 94111

19

Fax: (415) 397-7188
Assoc. Counsel for Defendant Petrini

20

21

Robert C. Schubert
Juden Justice Reed
Willem F. Jonckheer

22

**Schubert & Reed LLP**

23

Two Embarcadero Center, Suite 1660
San Francisco, CA 94111

<u>Also by Federal Express</u>

W. Reece Bader
Virginia Mattos
Susan L. Masetti
**Orrick Herrington & Sutcliffe LLP**
1000 Marsh Road
Menlo Park, CA 94025
Fax: (650) 614-7401
Assoc. Counsel for Defendant Mehta

<u>Also by Federal Express</u>

Michael F. Tubach
Colleen M. Kennedy
**O'Melveny & Meyers LLP**
275 Battery Street, Suite 2600
San Francisco, CA 94111-3305
Fax: (415) 984-8701
Assoc. Counsel for Defendant Rowe

24

25

26

Stipulation and Agreement of Settlement
Master File No. C-01-3952 CRB (JCS)

27

- 34 -

28

sf-1743524 v2

This 20th day of July, 2004

_____  /s/  _____
Stuart J. Guber

**CHITWOOD & HARLEY, LLP**
Promenade II, Suite 2300
1230 Peachtree Street, NE
Atlanta, Georgia 30309
Telephone: (404) 873-3900
Facsimile: (404) 876-4476